**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ASHLEY MOORE,

Plaintiff,

v.

NORTHWEST COMMUNITY SCHOOLS,

Defendant.
_________________________________/

Case No. _____________

Hon. ________________

Anna Kozak (P84465)
MORGAN & MORGAN, P.A.
Attorneys for Plaintiff
150 W. Jefferson Ave., Suite 1400
Detroit, Michigan 48226
(313) 739-1969
anna.kozak@forthepeople.com
_________________________________/

## COMPLAINT AND JURY DEMAND

Plaintiff Ashley Moore, through her attorneys, Morgan & Morgan, P.A., states as follows for her Complaint against Defendant Northwest Community Schools:

## INTRODUCTION

1. Ashley Moore was the assistant principal of Northwest Elementary School. In the 2024–2025 school year, the District's Superintendent told her to smile more, the District surveyed her staff about her "warmth," and it placed her on a performance improvement plan four days after she returned from emergency

surgery—scrutiny it did not apply to male administrators. Her own supervisor told her that it is difficult to be a woman in a position of authority. When she completed every requirement of the plan, the District told her to resign or lose her job and promised her a positive reference. Less than three months after she asked the Superintendent whether gender was behind that decision, the District gave a prospective employer a reference that cost her a job offer the next morning.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Ashley Moore is a woman who resides in Livingston County, Michigan.

3. Defendant Northwest Community Schools ("the District") is a Michigan public school district with its administrative offices in Jackson County, Michigan. At all relevant times, the District employed fifteen or more employees and was Ms. Moore's employer within the meaning of 42 U.S.C. § 2000e(b), MCL 37.2201(a), and MCL 37.1201(b).

4. Upon information and belief, the District receives federal financial assistance, including federal education funding, and its operations are an education program or activity within the meaning of 20 U.S.C. §§ 1681(a) and 1687.

5. This Court has jurisdiction over Ms. Moore's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, under 28 U.S.C. §§ 1331 and

1343(a)(4). It has supplemental jurisdiction under 28 U.S.C. § 1367(a) over her claims under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq.*, and Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 *et seq.*, because those claims arise from the same facts.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the District resides in Jackson County, where the events giving rise to these claims occurred.

**ADMINISTRATIVE PREREQUISITES**

7. On or about October 8, 2025, Ms. Moore timely filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2026-00169. The charge described the performance improvement plan and staff surveys, her forced resignation, and the negative reference the District gave after promising a positive one.

8. The District's March 2026 position statement to the EEOC responded both to Ms. Moore's discrimination allegations and to her allegation that the negative reference was retaliatory.

9. On June 29, 2026, the EEOC issued, and Ms. Moore received, a Determination and Notice of Rights. Ms. Moore filed this action within 90 days of receiving it.

10. Title IX, ELCRA, and the PWDCRA do not require the exhaustion of administrative remedies.

## FACTUAL ALLEGATIONS

### A. Ms. Moore Was a Qualified Administrator.

11. The District hired Ms. Moore as Assistant Principal of Northwest Elementary School in August 2023. She was qualified for the position.

12. Ms. Moore's direct supervisor was Principal Aaron Bush. Superintendent Geoff Bontrager and Curriculum Director Cari Bushinski oversaw the District's building administrators, including Ms. Moore. Julie Lawless was the District's Director of Human Resources.

### B. Ms. Moore Became Seriously Ill in the Fall of 2024.

13. Beginning in October 2024, Ms. Moore suffered from a serious gastrointestinal condition that caused abdominal pain, diarrhea, rectal bleeding, and a need to use the restroom frequently. The condition confined her to areas of the building near a restroom. Bush knew this.

14. Ms. Moore was hospitalized on November 6, 2024, and again from November 12 to November 15, 2024. Bush knew of both hospitalizations. Bush and Lawless were told of the second hospitalization and of her resulting absence from work.

15. Ms. Moore returned to work on November 18, 2024. Four days later, Bontrager and Bushinski asked to meet with her.

**C. The Superintendent Told Ms. Moore to Smile, and Her Supervisor Tied the Complaints to Her Sex.**

16. On November 26, 2024, Bontrager and Bushinski told Ms. Moore that two staff members had complained that she was not friendly enough. Bontrager told her that if she smiled more, it might help.

17. As conveyed to Ms. Moore, the complaints concerned her demeanor, not her performance of any job duty.

18. From December 3 to December 5, 2024, Ms. Moore and Bush traveled together to a professional conference. Discussing the complaints, Bush told her repeatedly, in words or substance, that it is difficult to be a woman in a position of authority and that some women cannot take direction from a younger woman.

19. At the conference, James Laughlin, a male building administrator in the District, told Ms. Moore that some staff members in his building did not like him, but that Bontrager and Bushinski had never spoken to him about it.

20. Days later, Bontrager approached Ms. Moore in her building and asked whether she had been working on smiling more.

### D. Four Days After Emergency Surgery, the District Placed Ms. Moore on a Plan Built Around "Warmth."

21. On December 13, 2024, Ms. Moore was hospitalized again. At Bush's request, she emailed all building staff to explain her condition and her absence. The next day, she underwent an emergency colectomy. She was out of work through December 20, 2024, and winter break followed.

22. Because Ms. Moore needed to be off work for the surgery, Bontrager was informed of it. Upon information and belief, Bushinski also knew of it.

23. From October 2024 through her recovery from surgery, Ms. Moore's condition substantially limited major life activities, including digestion, bowel function, and the elimination of bodily waste. It did not prevent her from performing the duties of her position.

24. In the alternative, the District regarded Ms. Moore as having a physical condition that substantially limited those major life activities. The District knew of her repeated hospitalizations, her emergency surgery, and her absences from work, and it measured her "improvement" over a period it knew she had spent on medical leave.

25. Ms. Moore returned to work on January 6, 2025. Four days later, on January 10, Bontrager, Bushinski, and Bush placed her on a performance improvement plan ("PIP"). Bontrager again told her to smile more.

26. Bushinski then surveyed all building staff about Ms. Moore's communication style, "general warmth," and "appearance in the building." By the District's own account, most responses stated that no improvement could be seen because Ms. Moore had been on leave.

27. The PIP required Ms. Moore to attend training, read an assigned book, and improve her results on a second staff survey. Bontrager also required that no staff member or family make a single negative comment about her during the PIP. On January 24, 2025, Bontrager, Bushinski, and Bush reviewed the survey results with Ms. Moore, and Bontrager told her that she needed to work on, among other things, smiling more.

28. Neither the PIP nor the surveys measured Ms. Moore's performance of her duties against any objective standard.

## E. Ms. Moore Completed the Plan, and the District Told Her to Resign.

29. Ms. Moore did everything the PIP required. On March 10, 2025, Bushinski sent staff a second survey that again asked about Ms. Moore's "general warmth." On March 19, Bush told Ms. Moore that she had met all of the PIP's requirements.

30. On March 20, 2025, Bontrager, Bushinski, and Bush met with Ms. Moore. Bontrager acknowledged that her survey results had improved and that she had fulfilled the PIP. He then told her that, because of the staff's rating of her

warmth, the District would end her employment contract unless she resigned. He gave no other reason.

31. Ms. Moore agreed to resign effective June 20, 2025. Bontrager and Bushinski then promised her a positive reference from the District, and Bush agreed. The District has acknowledged that the Superintendent agreed to give her a positive reference.

32. Ms. Moore resigned only because the District had decided to end her contract, and the promised reference induced her not to contest that decision. Losing her contract would have impaired her ability to find work in public education. A reasonable person in her position would have felt compelled to resign.

### F. The District Rated Ms. Moore Four Out of Four, and She Asked Whether Gender Drove Its Decision.

33. During the week of May 26, 2025, Bontrager and Bushinski met with Ms. Moore for her annual performance review. Bushinski rated her four out of four. Bontrager told her, in substance, that she had done everything right in the job, that it was not a great fit of personalities, and that earlier intervention about her warmth might have changed the outcome.

34. At that review, Ms. Moore asked Bontrager directly whether the District's decision to force her resignation was related to her gender. Bushinski was present.

**G. The District Did Not Treat Male Administrators This Way.**

35. During Ms. Moore's employment, the District employed three male assistant principals and other male building administrators, including Laughlin. Upon information and belief, they answered to Bontrager and Bushinski and were held to the same standards as Ms. Moore.

36. Phil Scykutowicz, a male assistant principal at Northwest High School, drew numerous complaints for failing to complete reports and failing to communicate with staff—complaints about his performance of core duties, not his demeanor.

37. Upon information and belief, the District did not place Laughlin, Scykutowicz, or any other male administrator on a PIP, survey staff about his warmth, tell him to smile, impose a no-complaint standard on him, or require him to resign.

**H. The District Broke Its Promise and Cost Ms. Moore a Job.**

38. On August 21, 2025, Fowlerville Community Schools interviewed Ms. Moore and offered her a position. She had listed Bush as a reference.

39. Fowlerville then contacted Bush. The next morning, Fowlerville rescinded its offer because of a negative reference.

40. On August 22, 2025, Bush admitted to Ms. Moore that he had told Fowlerville she would not be rehired in her position at Northwest. That statement broke the District's promise and contradicted its four-out-of-four evaluation.

41. The same day, Ms. Moore told Bontrager what Bush had said. Bontrager, who knew that Ms. Moore had asked whether gender drove her removal, promised to contact Fowlerville and retract Bush's statements. Upon information and belief, no one from the District did so. Fowlerville did not renew its offer.

42. Upon information and belief, Bush also knew, before he spoke with Fowlerville, that Ms. Moore had raised that question.

## I. Ms. Moore Has Suffered Substantial Harm.

43. The District's conduct has caused Ms. Moore lost wages and benefits, lost earning capacity, emotional distress, humiliation, and damage to her professional reputation.

44. Ms. Moore pleads her claims in the alternative to the extent they are inconsistent. Fed. R. Civ. P. 8(d)(2)–(3).

## COUNT I
## Sex Discrimination — Title VII
## 42 U.S.C. § 2000e-2(a)(1), (m)

45. Ms. Moore incorporates paragraphs 1 through 44.

46. Because of Ms. Moore's sex, the District (a) placed her on the PIP, surveyed her staff about her warmth, and imposed a no-complaint standard; (b)

ended her employment by requiring her to resign under threat of losing her contract, which was a discharge or, alternatively, a constructive discharge; and (c) gave a prospective employer a negative reference. Each action harmed her with respect to the terms, conditions, or privileges of her employment.

47. Ms. Moore's sex was a motivating factor in, and a but-for cause of, each action. The District judged her against sex stereotypes, including whether she smiled enough and was warm enough; acted on complaints that her supervisor attributed to resistance to a woman's authority; and treated similarly situated male administrators more favorably.

48. These violations caused Ms. Moore the damages described in paragraph 43.

**COUNT II**
**Retaliation — Title VII**
**42 U.S.C. § 2000e-3(a)**

49. Ms. Moore incorporates paragraphs 1 through 44.

50. Ms. Moore engaged in protected activity when, at her annual performance review during the week of May 26, 2025, she asked Bontrager whether the District's decision to force her resignation was related to her gender. Bontrager and Bushinski heard her ask.

51. Less than three months later, the District told a prospective employer that Ms. Moore would not be rehired, causing that employer to rescind its offer, and

then failed to retract the statement after Bontrager promised to do so. That conduct would dissuade a reasonable worker from making or supporting a charge of discrimination.

52. The District acted because of Ms. Moore's protected activity. The reference came less than three months after she raised her concern; it broke the District's promise and contradicted the four-out-of-four evaluation the District gave her at the same review; and Bontrager, who heard her concern, did nothing to correct it.

53. These violations caused Ms. Moore the damages described in paragraph 43.

## COUNT III
## Sex Discrimination — Title IX
## 20 U.S.C. § 1681(a)

54. Ms. Moore incorporates paragraphs 1 through 44.

55. Ms. Moore was employed in the District's education program or activity, which receives federal financial assistance.

56. On the basis of Ms. Moore's sex, the District subjected her to discrimination under that program, and excluded her from participation in it, through the actions described in paragraph 46.

57. Those actions were the District's own official decisions, made by its Superintendent and other officials with authority to act for the District.

58. These violations caused Ms. Moore economic damages, including lost wages, benefits, and earning capacity.

**COUNT IV**
**Sex Discrimination — ELCRA**
**MCL 37.2202(1)(a)**

59. Ms. Moore incorporates paragraphs 1 through 44.

60. Because of Ms. Moore's sex, the District discharged her and otherwise discriminated against her with respect to the terms, conditions, and privileges of her employment through the actions described in paragraph 46. Her sex was a motivating factor in, and made a difference to, each action.

61. These violations caused Ms. Moore the damages described in paragraph 43.

**COUNT V**
**Retaliation — ELCRA**
**MCL 37.2701(a)**

62. Ms. Moore incorporates paragraphs 1 through 44.

63. Ms. Moore opposed a violation of ELCRA when, at her annual performance review during the week of May 26, 2025, she asked Bontrager whether the District's decision to force her resignation was related to her gender. Bontrager and Bushinski heard her ask.

64. Because of that opposition, the District gave a prospective employer a negative reference that caused the employer to rescind its offer, and it failed to retract the reference after Bontrager promised to do so.

65. These violations caused Ms. Moore the damages described in paragraph 43.

**COUNT VI**
**Disability Discrimination — PWDCRA**
**MCL 37.1202(1)(b)**

66. Ms. Moore incorporates paragraphs 1 through 44.

67. Ms. Moore has a disability within the meaning of MCL 37.1103(d)(i): her gastrointestinal condition is a determinable physical characteristic that substantially limited major life activities, including digestion, bowel function, and the elimination of bodily waste.

68. In the alternative, the District regarded Ms. Moore as having such a characteristic, MCL 37.1103(d)(iii), or she has a history of one, MCL 37.1103(d)(ii).

69. Ms. Moore's disability is unrelated to her ability to perform the duties of her position. MCL 37.1103(l).

70. Because of her disability, the District discharged Ms. Moore and otherwise discriminated against her with respect to the terms, conditions, and privileges of her employment. It summoned her about staff complaints four days after she returned from a hospitalization; placed her on the PIP four days after she

returned from surgery; measured her "improvement" with a survey taken during her recovery, on which staff said they could not assess her because she had been on leave; and required her to resign on the strength of those surveys.

71. The District knew of Ms. Moore's disability, or perceived disability, when it acted. Bontrager had been told of her surgery; her supervisor and the Director of Human Resources had been told of her hospitalizations; she had informed all building staff of her condition; and the decision-makers reviewed survey results reporting that she had been on leave. Her disability was a motivating factor in, and made a difference to, each decision.

72. These violations caused Ms. Moore the damages described in paragraph 43.

## RELIEF REQUESTED

Ms. Moore asks the Court to enter judgment against the District and to award:

a. Back pay and lost benefits, with interest;

b. Reinstatement or, in lieu of reinstatement, front pay;

c. Compensatory damages, including damages for emotional distress, humiliation, and harm to her professional reputation, to the extent each statute allows;

d. An order requiring the District to remove the PIP and related materials from Ms. Moore's personnel file and to give prospective employers a reference consistent with its promise;

e. Reasonable attorney fees, expert fees, and costs under 42 U.S.C. §§ 1988(b) and 2000e-5(k), MCL 37.2802, and MCL 37.1606(3); and

f. Any other relief the Court finds just.

## JURY DEMAND

Ms. Moore demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

Respectfully submitted,

MORGAN & MORGAN, P.A.

**/s/ Anna Kozak**
Anna Kozak (P84465)
Attorneys for Plaintiff
150 W. Jefferson Ave., Suite 1400
Detroit, Michigan 48226
(313) 739-1969
anna.kozak@forthepeople.com

Dated: September 28, 2026